The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting, God save the United States, in this Honorable Court. Thank you. Be seated. Welcome to the Fourth Circuit. Your panel this morning from my right, the great state of South Carolina, Judge Richardson and Judge Rushing of North Carolina, myself of North Carolina. So, good to see you. We are here to hear two cases today. We will start with the first case, the Kiser case, and we'll hear from the appellate's attorney. Good morning, Your Honor. May it please the Court, my name is Scott Ballinger. I'm the Director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Mary Triplett and Casey Schmidt, who will be presenting argument for Mr. Lumumba. Thank you very much. You may proceed. Good morning, Your Honors, and may it please the Court. The Virginia Department of Corrections has essentially confined our client to an additional six months in prison for violating a rule that is unconstitutional as applied to him, facially overbroad, and void for vagueness. The rule at issue in this case is Offense Code 128, which prohibits inmates from participating in or encouraging others to participate in a work stoppage or a group demonstration. Mr. Lumumba was engaged in abstract advocacy and communications to individuals outside the prison. Neither the Department of Corrections, nor opposing counsel, nor the District Court has been able to identify what demonstration Mr. Lumumba was planning. You can search the record in vain for any information about when, where, why, or with whom Mr. Lumumba was planning this alleged group demonstration. Now, the Supreme Court has drawn a distinction between abstract advocacy and advocacy of eminent lawless action. Counsel, before you get too far into this, with respect to the as-applied challenge, I take your position to be that it was raised by the petitioner here below, but that the District Court didn't pass on it? Yes, Your Honor, we believe that the as-applied challenge is encompassed within the certificate of appealability, and that... I understand that. Before we get there, we have to have a final order from the District Court. And if you're right that the petitioner raised an as-applied challenge and the District Court did not address it, I'm not sure you're right on either of those points, but if you're right on both of those points, then we lack appellate jurisdiction and we don't have anywhere else to go, right? In that case, the proper course would be to remand for the resolution of the as-applied question. Okay. And so help me understand, based on the petitioner's petition, I understand you do an excellent job on your brief, but when I look back to the petition, how I derive an as-applied challenge, given the explicit labels that are included and described? Yes, Your Honor, when Mr. Lumumba was raising his petition, he discussed how he specifically had the right to speak critically of the government, and he references his speech in particular, which although it wasn't as particularly clear... In every facial challenge, right, even with the very best of lawyers, there's some discussion of the petitioner, right? You have to explain why you have standing, right? So the fact that they discuss in the context of the entire petition, entire, I know it's not that extensive, but the fact that they discuss his conduct some doesn't raise an as-applied challenge, and I very much understand had he not used the labels of over-breath and void for vagueness, had he just sort of had a factual description, maybe we should sort of give some liberal interpretation to it. But he chose two doctrines, the district court interpreted them maybe fairly as being both facial challenges, and then we get here and it seems like a total switch of the game, and I'm having a little hard time from the starting point how we can really read an as-applied challenge in, given his specific reference to over-breath and void for vagueness. Yes, Your Honor, I understand that concern, and I'd like to point you to page 25 of the Joint Appendix, and there it reads, the present case involves a dispute over the scope of petitioner's constitutionally protected free speech liberty guaranteed by the First Amendment. Well, but to say, that has to be true for a facial challenge too, otherwise you lack standing. So you can't bring a facial challenge if it doesn't involve the petitioner's First Amendment rights. So the petitioner has to have some interest. You don't get to challenge, you personally can't challenge a prison regulation on First Amendment grounds because you're not in prison, so your First Amendment rights aren't implicated. So that's totally fair, but that doesn't mean we have an as-applied challenge. Yes, Your Honor, I would respectfully disagree. I think that this case applies to Mr. Lumumba's speech specifically, that he was clear enough when he was raising that challenge referencing his conduct specifically. But if you think that Mr. Lumumba didn't adequately raise this as-applied challenge, we'd be happy to speak about the facial over-breath doctrine and move forward onto that. We believe the proper approach under the facial over-breath question is provided by United States v. Stevens, and Stevens asks whether a substantial number of a law's applications are unconstitutional in relation to its plainly legitimate sweep. Now the Supreme Court has made clear that Turner v. Safley is not the proper approach for regulations involving all constitutional rights. It only applies to regulations that infringe on rights which are inconsistent with incarceration. Now a prisoner's right to be free from over-broad and vague laws is perfectly consistent with incarceration, which takes it outside of the Turner approach. At that point, Turner is not applicable and Turner is not the correct way to analyze it. The Supreme Court made that clear in its 2005 case of Johnson v. California, and this Court took the same approach in the 2023 case of Firewalker Fields. The differentiation between Turner and Martinez goes to whether it is communication within the prison that is outgoing. How do we analyze this case as applying either Martinez or Turner? We believe the Martinez-Turner distinction is specifically relevant for the as-applied challenge, and then the Turner-Stevens distinction is relevant for the facial over-breath challenge. And I'm happy to talk about, for the as-applied challenge, the issue about whether Mr. Lumumba's communications were specifically outgoing. So you don't see the relevance of Martinez as applying to the over-breath challenge? We believe that the proper approach would be Stevens, Your Honor. Stevens provides the traditional over-breath analysis. And the Supreme Court and this Court have recognized the distinction between rights which operate as a structural constraint on the government. And that's those rights in those cases that I was discussing earlier, which is the Equal Protection Clause, the Establishment Clause. And we believe that the over-breath doctrine fits right into that approach. Help us understand why, I agree with you, Martinez doesn't apply, but help me understand why we apply traditional over-breath doctrine in the facial challenge and not Turner. I mean, it seems like what the Court has told us in Thurnburg and other places that when we're in the prison context, what we're doing is we're applying Turner. Yes, Your Honor. I think it has to do with the nature of the claim that's being raised. So Johnson v. California dealt with an equal protection challenge. And then Firewalker Fields dealt with the Establishment Clause challenge. And those essentially operate as a structural constraint on the government. And likewise, the Department of Corrections doesn't have a legitimate... Wait, in Firewalker Fields, I mean, so it's a First Amendment claim. Why is that different from the First Amendment claim? I mean, they're both First Amendment claims. They're both about, you know, what the government can and cannot do in prison. They seem to all apply Turner. And it seems like the Supreme Court has told us that Turner applies in the prison. That's what we've got. Now, maybe there's a different question about going out of the prison in a particular context. That's Martinez. We've narrowly interpreted that. But bracket that for a minute. Why do we think that the First Amendment gets carved up and the difference exists? The difference in Firewalker Fields, which we're discussing, there was a free exercise claim, which we believe falls into this individual constitutional rights, which should be analyzed under Turner. But then Firewalker Fields also dealt with an Establishment Clause claim, which this court remanded to be analyzed after Kennedy v. Bremerton. And so just like the prison has no legitimate penological interest in establishing a religion in the prison, so too does the Department of Corrections not have a legitimate penological interest in drafting these overbroad and vague laws. But that's just to answer the question, right? So that seems to suggest that we're asking, is there a legitimate penological interest? Well, that's Turner. And if there is none, then you fail Turner, not you. They fail Turner. And that makes total sense. But that's just an application of Turner. You're just applying Turner and saying that you win under Turner because there's no legitimate penological interest. I think it's a difference of degree, Your Honor. I think Turner is very deferential to the prison environment. And this question of, you know, is there a logical or rational relationship? So you agree we apply the question of, is there a legitimate penological interest? You just think we weigh it differently? When I was using the term legitimate penological interest, I was attempting to describe or to categorize the difference between these rights. And so when we look at the overbreadth doctrine. But that is the test from Turner, right? I mean, that's why you used the phrase because that's the natural way to distinguish between the two. Is Turner itself? Yes, Your Honor. I think the difference when we're looking at Stevens is we're looking at the scope of speech and conduct that this offense code 128 could apply to. And that's different than asking whether. Have we applied Stevens in a prison context? No, Your Honor. This court and the Supreme Court have not specifically applied Stevens in the prison context. But I can point you to an Eighth Circuit case where the Eighth Circuit did discuss the Stevens test in a prison context. And that's Sisney, a 2021 case from the Eighth Circuit. And they also discussed Turner, but they applied Stevens in a substantial manner. And I can also point you to some other cases where circuits have applied the two-pronged vagueness test as opposed to applying the test from Turner versus Safley. And we believe that the overbreadth doctrine and the vagueness doctrine go hand in hand in that manner. Both the Second Circuit, the Third Circuit, this court, and the Ninth Circuit have applied the two-pronged vagueness test when we're looking at challenges to prison regulations under the void for vagueness doctrine. We believe that the overbreadth doctrine goes just right into that approach and that they should be analyzed under the traditional overbreadth approach as opposed to under this Turner versus Safley analysis. Now, if we look at under the Stevens approach, Your Honor, I can explain a little bit more about how this analysis would look. So even if this court is inclined to look at the regulation and apply it only to types of riots or protests that might apply within the prison, United States versus Stevens demonstrates why that's not the proper resolution of the case. It says that federal courts should not apply a limiting construction where the plain text of a law results in substantial unconstitutional applications. And the argument for a limiting construction there was extremely strong in Stevens. In Stevens, the government asked the court to read the words wounded and killed as interpreted only to conduct that applied to depictions of animal cruelty. Now, they were defining the term animal cruelty and that appeared in the depiction of animal cruelty act. They also appeared alongside the words maimed, mutilated, and tortured. But the court said that the ordinary meaning of the words in that statute had such alarming breadth. They applied to depictions of hunting and the court refused to apply a narrowing construction, even though that might have been the natural inclination to read those words. And I think Offense Code 128 presents the same issue, whether you were to analyze this under Stevens or even if this court were to look at it under Turner. Because your natural inclination might be to read Offense Code 128 as applying only to activities within the prison, but the court's inclination would be incorrect in that sense. It would be inappropriate to limit the regulation because the essential issue with Offense Code 128 is that nothing in the text is limited to that context. As a result, it applies to broad swaths of constitutionally protected conduct that extend from inmates having a prayer circle together in the prison to an inmate calling his relative on the outside of the prison and encouraging them to participate in a work strike. Are we, as a federal court, allowed to apply a narrow construction or limiting construction to a state law if it is not readily apparent? No, Your Honor. We don't believe it would be proper to apply a limiting construction in this context, particularly when Virginia courts have not spoken about the breadth of Offense Code 128. And that's exactly the argument that was raised in Stevens that I was just discussing. Even if there are some constitutional applications in this instance, which might lead to riots and protests in a prison, we don't dispute that the government does have a legitimate interest in prohibiting those. The core issue with Offense Code 128 is that it sweeps in all of this constitutionally protected speech and conduct. Now, even if you think some of these examples that we've provided are far-fetched, that's far from the case, Your Honor. There are several examples of how the individual prison officers and the federal government have abused this regulation and have applied it to instances of conduct which in no way implicates the prison's interest in order and safety, which are perfectly peaceful, perfectly innocuous, and do not disrupt the prison. All right. Well, thank you very much for your argument. I take it that your co-counsel will argue on rebuttal. That's right, Your Honor. All right. Then we'll proceed to hear from you, Mr. Gallagher. Good morning, and may it please the Court. I'm Kevin Gallagher, Principal Deputy Solicitor General of the Commonwealth of Virginia, representing the warden. With me today is Mike Dingman, Assistant Solicitor General. Mr. Lumumba admitted in emails that he was, quote, talking to brothers about a Gandhian Attica. He mentioned that his facility was, quote, severely understaffed and that hundreds of people were primed and ready. In talking about this Gandhian Attica, he mentioned the art of war and blood in the water. Prison officials reasonably charged him with a violation of Offense Code 128, which prohibits encouraging group demonstrations. Is it the confession that he made, or was it the communication outside for which is the basis of this violation? I believe on some level it's both, Your Honor. He was obviously communicating through Ms. Breslau to H. Shabazz, who is a prisoner at a different institution, and then also a female inmate who's not, I believe, named in the record. You know, and the interesting thing, and I understand we can delve into how it fits in terms of what the standards are, but when you communicate outside as a prisoner, if you are a mob boss or a gang leader, you have some control. I can see that. But just to a person outside, you send an email, unless you – I take it you can show he has some control or some means of directing that person to do it, that they have to do it. But it seems to me the acts insofar as that person is communicated with rely – depend on that person who's outside. The one on the inside simply sent something outside. You follow me there? I understand. And he didn't contact anybody in another prison. He called it directly a high-other. It depends on the action of the person outside. So, you know, it's kind of interesting when you take on that to say he is seeking to encourage something to happen inside the prison, when he's not, in any of those communications, done anything to communicate anything to the prison itself is to someone outside, and that person is the person who undertakes the action to do so. So why wouldn't the focus be on that person outside? And I realize it might be hard to criminalize someone in terms of the First Amendment for what they do on the outside of a prison because the rules are somewhat different. Your Honor, I have two responses to that. First of all, the key email, I believe, is the one that he sent on July 6th in which he said, I've been talking to brothers about a Gandhian Attica. That shows that within the prison that he is in, Sussex 1, he is talking to other inmates about this Gandhian Attica. My friends on the other side mentioned there's no who, what, when, where, and why. Prison officials don't need to wait until there's an invitation sent out to the Gandhian Attica. Do you need anything other than a statement to say I've been talking to? Do you need evidence to show he actually did talk to someone? Or is it you just can't say I've been talking to someone? In an email, he admitted to doing exactly what the offense code 128 prohibits, which is encouraging others. Understood. He admitted it himself. He said it. But if you don't have anything that he actually did it, is that sufficient to say attempting to encourage something happen? Yes, I believe that it is. He, again, it is. Is there any limit in the prison context? Sometimes we think about, you know, a uncorroborated confession in the context of a criminal trial. But in a prison disciplinary hearing, has anybody ever applied that the uncorroborated confession rule? Not to my knowledge, Your Honor, and I do think the prison context. I mean, that's the question, right? It's like this is a confession. It seems fairly straightforward that it is a confession. I take my friend's point to be is an uncorroborated confession sufficient to convict of a disciplinary violation in prison? I think that it is. Again, the prison context is very relevant here. And that to some extent, but it won't make it clear is it is a question of a confession. And what you call a confession is interesting. It depends. I mean, what you're saying is you can say, well, I kill five people in this place here. I didn't kill anybody. He just said it. His speech that he said, it's not, here's a crime and we have evidence of it. And now you are confessing to evidence to what we say is a crime. That's a confession. But to just speak, what are you confessing to? You are actually creating the crime itself in the message. There's a differentiation than the criminal conduct of corroboration or whether to a confession. Police has investigated something. The person confesses to what is there. But to simply create a crime through speech of saying, I did this and nothing else. And it violates a code just to say it, not to actually have done anything. Because it's an attempt. It's an attempt to encourage. That's the point. It's the encodedness of it that troubles me. But also the manner of the communication. I don't think it fits as a confession as my good friend would call it confession. I'm not sure it is confesses, but it creates what it confesses to. True. Your Honor, I do think the difference in between your example and offense code 128 is relevant here. If he says, I've killed five people, there will presumably be bodies. There will be things that hard evidence that people could find in order to charge him with the actual murder of it. Here, the offense is encouraging a group demonstration. He is admitted to the entire set of relevant facts by saying, I've been talking to brothers about a Gandhian Attica. That is the encouragement. If he says, I organized everybody at Riker's prison to go against something. He's never been there. He never made any connection. Is that. And he's not in that prison. But he says he's done it over there. Does that violate the code? That is certainly a different example, Your Honor. And he's not saying. But with that, I mean, that speech where he's saying, I've done something. And in the words of this confession, he's confessed. He's done something. But he's not even been there. There's no means in it. There's no indication he even had the opportunity to do it. Is that a violation of code 128? And that's not what we have here, Your Honor. He says, I've been organizing or I've been talking to brothers. It would be a sufficiency of the evidence challenge, right? So what we would say is, you have this confession. But there's other facts that disprove the confession. He's never been to Riker's. All right. Well, that's a sufficiency of the evidence challenge. But that is not what we have here. Nobody's argued that there's insufficient evidence. That's correct, Your Honor. Was there a hearing? That was exactly what I was going to say, Judge. OK. So it wasn't just the letters. There was a hearing. There was the emails that he sent. There was a phone call that he had. And then after all of that, there was a hearing held in which he was able to cross-examine the reporting investigator. He was allowed to ask questions of that person, explain what he meant by various phrases. So there he said, yes, I did what's in these emails. But by Gandhian, I meant something nonviolent, right? That's exactly right. He agreed that he did this but tried to explain it. He certainly agreed that he sent those emails and what was in the emails was accurate. He was able to explain certain phrases as far as blood in the water, art of war, what he meant by that. He said that those refer to books. Art of War is a Chinese military manual. Blood in the Water is a book about— Oh, it's more than that. Don't sell Art of the War short. Well, in some ways— Call it a Chinese military manual? Come on. But it certainly would, as a prison official, you read those emails, you might very well think that something is going to happen that you might not like. And again, Mr. Lumumba says, when I said Gandhian, as Judge Rushen, you were just saying, in the hearing he said, when I said Gandhian, I was referring to Mahatma Gandhi and peaceful protests. But Attica is going to bring a very different picture to mind in the prison official's mind. And even if Mr. Lumumba— Can I ask you about the as-applied challenge issue? There seems to be some disagreement, and I want to get your take on, did the petitioner raise an as-applied challenge? One, and why you think yes or no. But then two, did the district court address an as-applied challenge? Because you seem to argue in your brief that the district court analyzed the offense under the Turner Standard as applied to Lumumba. That's in footnote two. So you seem to suggest at one point that maybe it wasn't raised, or at least wasn't raised clearly. Seems reasonable. But then you take the position that the district court addressed that claim. And if the district court addressed that claim, then we're in a little bit of a different box. But can you help me understand why I think that it was or wasn't raised by petitioner, and why it was or wasn't raised or addressed by the district court? Sure, happy to. So I think if you look at the joint appendix, pages 24 and 25, that's what Mr. Lumumba's counsel now points to as the as-applied challenge. It is certainly, as you mentioned, Judge Richardson, in your question to my friend on the other side, it is in the context of the overarching headings of overbreath and void for vagueness. So I think the district court correctly viewed those as the facial overbreath and void for vagueness challenges. But stop there. First, we don't always sort of like hold pro ses to labels. And if I accept that, then the district court says that it's doing it as a facial overbreath. How do I then reach your conclusion that no, when the district court put it under the overbreath heading, we don't hold the district court to a lower standard than a pro se litigant. The district court said overbreath, facial, and then you quote the language from the overbreath facial section and say, yeah, but that was as applied to Mr. Lumumba. I think our point there, Your Honor, was that Mr. Lumumba asks for this case to be remanded in order for that claim to be determined as applied. And our only point is that the district court did exactly the analysis that the court would do if it was reviewing it as an as-applied challenge. It looked at the offense code 128 as applied to Mr. Lumumba's conduct. It didn't talk about it in some sort of overarching facial challenge only. It also said, here's what Mr. Lumumba did and here's why this was reasonably applied to him based on the legitimate peniological interests. So so why wouldn't I think I understand what you're saying, but why wouldn't I then say that? The petitioner and the district court called this overbreath, but neither of them actually answered the facial overbreath question. They actually answered the as applied to Mr. Lumumba's conduct. Right. Mr. Lumumba's brief talks about his conduct. Right. Not the sort of overarching idea, but his specific conduct. The district court, when it's addressing it, he calls it overbreath. He says it's facial. But then when he does the analysis, I think, as you rightly recognize, he does the as applied analysis. Right. So why don't why wouldn't we look at the petitioner and the district court and say, you know, the label probably got it wrong in both places. But what really happened here was an as applied challenge that was raised by petitioner addressed by the district court. And then the COA, they continued to apply the wrong label. But we ought to we ought to understand that to be what they called overbreath. What we understand legally to be as applied was done by petitioner, district court and included in the COA. I think your honor, your question from earlier to my friends the other side is exactly the reason that we wouldn't need to do anything different here, which is that, of course, in the context of a facial overbreath challenge, the the application of it to the petitioner is going to be relevant in order to have standing things of that nature. So I think when you look at the district court's analysis of that issue, this district court certainly looked at it as in the context of Lumumba's conduct, but also ruled on the overarching issue, which is that this this regulation is certainly not facially overbroad. And so I just don't think that it would be an issue at all to have to send it back. So your point is that even though the district court says there are only two facial claims that nonetheless, it didn't add up as applied analysis. My point, your honor, is that if you look at what Mr. Lumumba asked for in the petition, which is in the in the context of on pages twenty four and twenty five, he this is where under the overbreath heading is where he raises his Martinez versus Turner. You don't think there's any way when you're looking at a pro se petition of this sort that you could liberally construe that as including it as a prior challenge to vagueness in the First Amendment? Certainly, this court has held that in certain circumstances, pro se complaints should be liberally construed. My only point is that I do it in almost all circumstances saying they should be liberally construed. I've had some concerns about that because I don't think you should get more than you do with a lawyer. You seem to lose the right if you have a lawyer. It's not so. But that's what we do. And in this instance, if you look at it and you liberally construe that complaint, isn't it not plausible that it does put forth a claim for as applied as to vagueness in First Amendment? I think, your honor, if you were to interpret his claim as being either an as applied or a facial challenge, the district court's opinion isn't the clearest on this point. I will agree with Judge Richardson on that. But the district court ruled on the over breadth of the regulation. And that ruling both looked at Mr. Lumumba's conduct in sort of an as applied way, but also facially. The facial over breadth analysis would look at whether the plainly legitimate sweep, which is going to be viewed through the context of the prison system in which we're in, would be outweighed by any sort of unconstitutional applications. The district court looked at that analysis and said, in the prison context, where group demonstrations are going to be particularly disruptive to order and safety, there's not an over broad sweep of the prohibition that Mr. Lumumba would have to show from the text of the law and from actual fact that the sort of examples that he uses of prayer circle, basketball games, things of that nature, were actually in fact prohibited within the prison context. And he just hasn't shown that. His appellate counsel, friends of mine from my alma mater, have very ably said some examples that would be, that they think would fall within the stretch of it, but they've shown no examples of that actually being applied in that way. Unless your honors have any further questions, we rest in our briefs on the rest of the issues. Before you do, tell me the difference between talking to and encouraging and attempting to encourage. What would be the difference between that, talking to, encouraging, and attempting to encourage? In the context of what Mr. Lumumba said, when he says, I'm talking to brothers about Agony and Attica, that is encouragement. That is encouraging people. He's talking... What is the definition that you derive to be encouragement? I would say that encouragement in that context is that he is going around the prison, talking to other inmates about this Gandhian Attica. Is there a prison policy that sets up what a demonstration or encouragement would be? Those, as Mr. Lumumba points out, those phrases are not defined, but there are very clear definitions that would be applied here. Mr. Lumumba looks at certain dictionary definitions and says, hey, there's five, ten definitions of encourage and demonstration, but we use both dictionary definitions and common sense. And so in the prison context, when the regulation says you can't encourage group demonstrations, that would include talking about a Gandhian Attica. What is a group? How do you define that? I think a group would very clearly be two or more people. Clearly coming from where? What source? I think if you look in the dictionary definition and common sense, it would show that if you have two or more prison inmates together in the prison, that that is demonstrating, which again, that term is relevant. That would look at sort of like march, rally, protest type thing. If they're doing that in the prison context, that's exactly the threat to safety and order that the prison is trying to curb by offense code 128. Thank you, Your Honors. All right. We'll hear from you, Mr. Schmidt. Did I get that right? Yes, Your Honor. I said that D is not pronounced. It's not. May it please the court. My friend on the other side has said that the district court's opinion wasn't clear, but I believe it is clear on one thing. The district court clearly understood and addressed an overbreath claim. If you look at the joint appendix at page 120, the district court quotes from United States versus Stephen, starting by laying out the traditional test for an overbreath doctrine before then moving to Stephen's or to Turner. I think it is clear that the district court, at least in some ways, assumed that they were starting with an overbreath claim in this case. But you I mean, you say that's clear if you'd like. Right. And it says overbreath. And then the first paragraph says this is the traditional overbreath analysis. But then nothing it does is related to that. Right. I mean, none of the analysis. Right. Which is a little bit of a problem with the petition. Right. So it, too, says overbreath. But none of the discussion is about overbreath. I mean, it's one of these challenges that we've got. I agree with Judge Wynn. We ought to provide a reasonable liberal interpretation to a pro se brief. But when a pro se brief says I'm raising an overbreath challenge, it seems like to me that's what they've raised and we're limited to it. And maybe that is true as well for the district court. When they say this is a facial overbreath challenge, we take the district court at its word. Right. That's not a liberal question. We had a complaint that raised a breach of contract action. But in the argument section, they talked about a tort. We wouldn't change the cause of action for them. Right. I understand, Your Honor. And I think that's why perhaps the appropriate resolution in this case is a remand to the district court to determine whether or not that supply challenge was properly raised, addressed. And then because we think that's the proper threshold inquiry before proceeding to overbreath. No, but that's only true if it was properly raised by the petitioner. And if it's properly raised by the petitioner, then we have to dismiss the appeal because we lack appellate jurisdiction. There's no final order. Either the petitioner raised it. The district court failed to address it. But if that's true, we lack jurisdiction or the petitioner did not raise it because they chose an overbreath argument. The district court addressed an overbreath argument and we can address the overbreath argument, but we can't manufacture the as applied challenge. I agree, Your Honor. I think that now my friend on the other side has also tried to portray Mr. Lumumba's words as a confession. And I don't think that's a fair interpretation of the narrative here. I think that to the extent Mr. Lumumba in his emails confessed anything, he was confessing to abstract ideas or thoughts. And the Supreme Court has made clear the line between. You think that's true in light of the hearing? I think so, Your Honor. And to the extent that there was any concrete planning on Mr. Lumumba's part, the only concrete plan was that inmates were going to be checking in to protective custody. Mr. Lumumba speaks about the prison being understaffed in that protective custody program. When the prisons are understaffed, prisoners may be fearing for their safety in the prison and they wanted to check into the star program. And why would we require concrete steps? I mean, when you read the rag, it doesn't seem to say that. And I would seem to put a pretty hot burden on the prison to say you can only stop a riot once they start the riot. Right. That's not really where we are. Right. I mean, you got to have a you got to actually get the the club or you got to get the fire. You got to get that. You know, we we generally say in the prison context, at least, like the words are enough, like you can stop the riot before it starts. Certainly, Your Honor, the prison doesn't have to sit on its hands until there is a riot going on in the prison. But I think the difference is that the abstract advocacy here was not tied to any concrete plan that would disrupt the institution. But you said they had to take concrete action. Right. And so what I'm trying to say is concrete action is the riot or the demonstration or whatever it is like your suggestion here is it has to be like a concrete action. I don't think it necessarily an action, but there has to be at least a concrete plan. And here, Mr. Lumumba, there's no evidence of a plan that would be disruptive to the prison. At most, it was checking into protective custody. And to the extent that that would be disruptive to the prison, I don't think that in this case that warrants the sort of restriction on his free speech rights. So as long as so in your view, if he sat around and said, we're going to have a demonstration, this is what we're going to do. It's going to be like Attica. Right. Well, we're going to do these bad things. But everybody know we got no date and time for this. Right. So don't anybody say that there's a date and time. If that conversation was recorded, they couldn't be convicted. I think they could in that case because there would be a concrete idea of what they were going to be doing, disrupting the prison. And I don't think that exists here because at most, Mr. Lumumba's concrete plan was going into protective custody. That's when he talks about the star program. I think everything else is an abstract idea. And the Supreme Court has made clear that line. Sorry. So is your argument that we need to we're reviewing the prison's determination of whether his plan would be disruptive? You're saying his plan was they're understaffed. Let's all check in for protective custody at the same time. And you're saying, well, that's not really that disruptive. And the prison was wrong to think it was going to be disruptive. I think your honor can take that reading of the. Is that what the Supreme Court wants us to do? I mean, it's Turner. Are those the case? The case is telling us that we should be reviewing whether prison officials are right about how disruptive something's going to be. I think this is a question of constitutional fact to which Mr. Lumumba is entitled to judicial review and independent judicial review. He's the experts on how disruptive something's going to be in prison. I think that the prison is afforded deference and they certainly are allowed to have more deference than they would outside the prison. But the fact is that offense code 128. What would the effect be if you had, you know, 100 inmates report for protective custody? What would happen? Do you know? All right. I don't know. What would the effect on the prison be? Would it would it like cause problems? There are procedures in the prison for this star program of checking the custody. I'm not familiar with the specifics, but I think that would be not. You've got to be. I mean, Judge Richardson's point is if if you're not familiar with the specifics, you don't know if it would be disruptive. I don't know if it would be disruptive. All right. So are you are you changing your argument that it wasn't wouldn't have been disruptive enough to punish? All right. I don't think that based on the words alone with the email, you can conclude that he was planning something disruptive. And I think that's the problem here, because even if this court applies, Turner, there has to be a rational connection between the regulation and the prison's interest. And if you look at examples of other states, it shows that there are easy and obvious alternatives that Virginia didn't use here. Now, there's other states that limit their regulations to conduct among inmates. There's other states that provide examples of conduct. And your honor, for those reasons, unless you have any further questions, we ask to reverse.
judges: James Andrew Wynn, Julius N. Richardson, Allison J. Rushing